# STATE OF CONNECTICUT *v.* CHRISTOPHER S.*
## (SC 20247)

McDonald, D'Auria, Mullins, Kahn, Ecker and Vertefeuille, Js.

*Syllabus*

Pursuant to statute (§ 54-1o (b)), a "written . . . statement of a person under investigation for or accused of" certain crimes "made as a result of a custodial interrogation at a place of detention shall be presumed to be inadmissible as evidence against the person in any criminal proceeding unless . . . [a]n electronic recording is made of the custodial interrogation . . . ."

Pursuant further to statute (§ 54-1o (h)), the presumption of inadmissibility under § 54-1o (b) may be overcome when the state proves, by a preponderance of the evidence, that "the statement was voluntarily given and is reliable, based on the totality of the circumstances."

Convicted of the crimes of strangulation in the second degree and assault in the third degree, the defendant appealed to the Appellate Court. The defendant and the victim had a physical altercation in the early morning, and the police arrested the defendant. The arresting officer, C, read the defendant his rights under *Miranda* v. *Arizona* (384 U.S. 436), both at the time he was arrested and later that morning at the police station. Thereafter, less than six hours after the defendant's second *Miranda* warning, the defendant was questioned by a detective, M, but the interrogation was not video recorded. M did not readvise the defendant of his *Miranda* rights but did confirm with the defendant that he had been previously advised of his rights and that he was willing to speak with M. M then wrote out a narrative of the incident, and the defendant, after making several changes, signed and initialed the statement. Before trial, the state filed a motion seeking permission to introduce the defendant's

---

* In accordance with our policy of protecting the privacy interests of the victim of family violence, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

256 SEPTEMBER, 2021 338 Conn. 255

State *v.* Christopher S.

signed statement into evidence. Although the state acknowledged that, because the interrogation was not recorded, the defendant's statement was presumptively inadmissible pursuant to § 54-1o (b), it requested a hearing to establish that the defendant's statement was admissible pursuant to § 54-1o (h). After the hearing, the trial court determined that the state could introduce the defendant's statement, reasoning that the state had met its burden under § 54-1o (h) of proving that the defendant's statement was voluntarily given and reliable under the totality of the circumstances. At trial, the state offered the defendant's statement into evidence. The Appellate Court concluded, inter alia, that the defendant's statement was properly admitted and affirmed the judgment of conviction. On the granting of certification, the defendant appealed to this court. *Held*:

1. The defendant could not prevail on his claim that the Appellate Court improperly upheld the trial court's decision to admit his unrecorded, written statement into evidence on the ground that the state had failed to meet its burden of proving, in accordance with § 54-1o (h), that the statement was voluntarily given and reliable under the totality of the circumstances:

a. This court concluded that the defendant's claim regarding § 54-1o (h) was constitutional with respect to the voluntariness inquiry but evidentiary with respect to the reliability inquiry; it was significant that the legislature chose to use the word "voluntar[y]" in a statute dealing with the admission of statements made by criminal defendants subject to custodial interrogation in places of detention because "voluntary" was a constitutional term of art in this context, and voluntary in the constitutional sense was the meaning that the statute's intended audience of criminal lawyers, judges, and law enforcement personnel would assume.

b. The defendant could not prevail on his claim that the state had failed to meet its burden of proving that his unrecorded statement was voluntarily given, as the record supported the trial court's determination that there was no *Miranda* violation and that that defendant's statement was voluntary under the totality of the circumstances: the defendant received a valid *Miranda* warning at the police station, and there was no merit to the defendant's claim that M should have readvised him of his rights before beginning the interrogation, as less than six hours had passed between the defendant's *Miranda* warning at the station and the interrogation, M reminded the defendant of his rights by expressly confirming with him that he had been advised of those rights earlier that day, the interview concerned the same incident for which the defendant had been arrested and advised of his rights, and the trial court found that the defendant understood the warnings he received and that he was not intoxicated or otherwise mentally incapacitated; moreover, the defendant, having received and understood valid *Miranda* warnings and voluntarily participated in the interrogation, implicitly gave a knowing, voluntary waiver of his *Miranda* rights; furthermore, the totality of the

State *v.* Christopher S.

circumstances surrounding the defendant's interrogation supported the trial court's determination that the defendant voluntarily gave his statement to M, as the defendant was thirty-eight years old and was not intoxicated or impaired, the interrogation lasted only one hour, there was no evidence that M used any potentially coercive methods during the interrogation, and the defendant did not explain how the specific circumstances, including M's failure to record the interrogation, could have served to overbear his will and to elicit an involuntary confession.
c. The defendant failed to establish that the trial court had incorrectly determined that his unrecorded statement was reliable because, even if this court were to require independent, corroborating evidence to prove the reliability of his statement, the totality of the circumstances in this case, including instances of corroboration, demonstrated that the trial court correctly concluded that the state had met its burden.

2. This court declined to exercise its supervisory authority over the administration of justice to require trial courts to give a special instruction in all cases in which the police fail to record a custodial interrogation, but it emphasized that it was well within the trial court's discretion to give a specific, cautionary instruction when the police fail to record a custodial interrogation in violation of § 54-1o (b); because an unrecorded statement obtained during a custodial interrogation already has a legislatively prescribed presumption of inadmissibility, a jury instruction in all cases was not necessary to guard against a threat to the integrity of a particular trial or the perceived fairness of the judicial system as a whole, and the statutes of other states that provide for a jury instruction requirement when the police fail to record certain custodial interrogations were distinguishable from § 54-1o because they did not provide for a presumption that such statements were inadmissible.

*(Two justices concurring separately in one opinion)*

Argued June 12, 2020—officially released March 10, 2021**

*Procedural History*

Substitute information charging the defendant with the crimes of burglary in the first degree, kidnapping in the second degree, strangulation in the second degree, and assault in the third degree, brought to the Superior Court in the judicial district of Hartford and tried to the jury before *Bentivegna, J.*; verdict and judgment of guilty of strangulation in the second degree and assault in the third degree, from which the defendant appealed to the Appellate Court, *Prescott, Bright* and

** March 10, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

State *v.* Christopher S.

*Flynn, Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed.*

*Timothy H. Everett*, assigned counsel, with whom, on the brief, were *Corinne Burlingham, Brendan Donahue, Alexander Hyder* and *Michael Nunes*, certified legal interns, for the appellant (defendant).

*Matthew A. Weiner*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Richard J. Rubino*, senior assistant state's attorney, for the appellee (state).

*Maura Barry Grinalds* and *Darcy McGraw* filed a brief for the Connecticut Innocence Project et al. as amici curiae.

*Opinion*

McDONALD, J. General Statutes § 54-1o[1] provides that, if a person suspected of one of several enumerated

---

[1] General Statutes § 54-1o provides in relevant part: "(b) An oral, written or sign language statement of a person under investigation for or accused of a capital felony or a class A or B felony made as a result of a custodial interrogation at a place of detention shall be presumed to be inadmissible as evidence against the person in any criminal proceeding unless: (1) An electronic recording is made of the custodial interrogation, and (2) such recording is substantially accurate and not intentionally altered.

* * *

"(d) If the court finds by a preponderance of the evidence that the person was subjected to a custodial interrogation in violation of this section, then any statements made by the person during or following that nonrecorded custodial interrogation, even if otherwise in compliance with this section, are presumed to be inadmissible in any criminal proceeding against the person except for the purposes of impeachment.

"(e) Nothing in this section precludes the admission of:

* * *

"(2) A statement made during a custodial interrogation that was not recorded as required by this section because electronic recording was not feasible;

"(3) A voluntary statement, whether or not the result of a custodial interrogation, that has a bearing on the credibility of the person as a witness;

* * *

"(6) A statement made during a custodial interrogation by a person who requests, prior to making the statement, to respond to the interrogator's

338 Conn. 255 SEPTEMBER, 2021 259

State *v.* Christopher S.

classes of felonies gives a statement to law enforcement
as a result of a custodial interrogation at a detention
facility, the statement will be presumed to be inadmissi-
ble unless officers make an audiovisual recording of
the interrogation. Under subsection (h) of the statute,
the state may overcome the presumption of inadmissi-
bility in any case by proving by a preponderance of the
evidence that the statement "was voluntarily given and
is reliable, based on the totality of the circumstances."
General Statutes § 54-1o (h). The defendant, Christo-
pher S., appeals from the Appellate Court's judgment
affirming his conviction of strangulation in the second
degree and assault in the third degree. See *State* v.
*Spring*, 186 Conn. App. 197, 201, 220, 199 A.3d 21 (2018).
His principal claim is that the Appellate Court incor-
rectly upheld the trial court's decision to admit into
evidence a signed, written statement that he made dur-
ing a custodial interrogation, which officers failed to
record in violation of § 54-1o. Specifically, the defen-
dant contends that the Appellate Court incorrectly con-
cluded that the state had met its burden of proving that
the statement was both voluntary and reliable under
§ 54-1o (h). The defendant also asks us to exercise our
inherent supervisory authority to require trial courts,
in all cases in which the police fail to record an interro-
gation in violation of the statute, to instruct the jury

questions only if an electronic recording is not made of the statement,
provided an electronic recording is made of the statement by the person
agreeing to respond to the interrogator's question only if a recording is not
made of the statement;

\* \* \*

"(8) Any other statement that may be admissible under law.

"(f) The state shall have the burden of proving, by a preponderance of
the evidence, that one of the exceptions specified in subsection (e) of this
section is applicable.

\* \* \*

"(h) The presumption of inadmissibility of a statement made by a person
at a custodial interrogation at a place of detention may be overcome by a
preponderance of the evidence that the statement was voluntarily given and
is reliable, based on the totality of the circumstances. . . ."

State *v.* Christopher S.

that the police violated the law and that jurors should evaluate with "particular caution" the weight to give the statement and any police testimony regarding the interrogation. We affirm the judgment of the Appellate Court and decline to mandate the requested jury instruction.

The Appellate Court's opinion sets forth the facts that the jury reasonably could have found; see *State* v. *Spring*, supra, 186 Conn. App. 201–207; which we summarize in relevant part. The Enfield police arrested the defendant at approximately 5:30 a.m., after the defendant and the victim had a physical altercation. The arresting officer, Mark Critz, read the defendant his *Miranda*[2] rights both at the time he was arrested and, again, at approximately 7:23 a.m., at the Enfield police station. The defendant was placed in lockup until approximately 1:10 p.m. the same day, when he was brought to the desk of Detective Martin Merritt for questioning. Merritt's desk was situated in a large room containing a number of cubicles with walls about five feet high. The interrogation was not video recorded. Merritt did not readvise the defendant of his *Miranda* rights because Critz had informed Merritt that the defendant had previously been provided such warnings twice. Merritt did confirm with the defendant that he had been advised of his rights and was willing to speak with Merritt.

Merritt asked the defendant to explain what had happened the night before, asking clarifying questions when necessary and taking notes. From the defendant's statements, Merritt wrote out a narrative of the incident on an Enfield Police Department form titled "Supplement/Statement." Merritt explained to the defendant that this was the defendant's statement and that it

---

[2] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

State *v.* Christopher S.

should reflect his perspective of what happened. The defendant made several changes to the statement, which he signed in three places and initialed in fourteen places. The preprinted form on which the statement was written also contains the following acknowledgment: "I HAVE READ THE ABOVE STATEMENT AND IT IS TRUE TO THE BEST OF MY KNOWLEDGE. I FULLY UNDERSTAND THAT IF I MAKE A FALSE STATE-MENT THAT IS UNTRUE AND WHICH IS INTENDED TO MISLEAD A LAW ENFORCEMENT OFFICER IN THE PERFORMANCE OF HIS OFFICIAL FUNCTIONS I WILL BE IN VIOLATION OF [GENERAL STATUTES § 53a-157]. A FALSE STATEMENT IS A CLASS A MIS-DEMEANOR, WHICH IS PUNISHABLE UP TO [ONE] YEAR IN JAIL AND/OR A [$1000] FINE AND NOT MORE THAN [THREE] YEARS PROBATION." In the statement, the defendant also acknowledged that he had been advised of his rights, understood those rights, was making the statement of his own free will, without any threats or promises having been made, and that he was giving the statement voluntarily.

The defendant's statement provided the following summary of the incident. The defendant and the victim were married but had been on a break, living in separate residences, for about two weeks. The night before the incident, the defendant was watching a boxing match at a party. After leaving, the defendant drove to the victim's house in Enfield and knocked on a porch window. The victim let the defendant in the house, and they talked for a few minutes, eventually deciding to take a drive together. Once in the car, the defendant and the victim argued about having cheated on each other. The defendant "became very angry," pulled the car over, and began choking the victim with his hands. He also "punched her once in the side of the head . . . and slap[ped] her several times." At some point, the victim punched the defendant in the face and cut his

State *v.* Christopher S.

gum, causing him to bleed from the mouth. The defendant then drove the pair to the home of the defendant's ex-wife. Both the defendant and the victim had a lot of blood on them from the fighting. Shortly thereafter, the police were called. The defendant "hung out on the back patio for a while [and] then went for a walk," and the police detained him while he was walking. The defendant talked to an officer about what had happened before being arrested and taken to the Enfield police station.

The record reveals the following procedural history. The defendant was charged with one count each of (1) burglary in the first degree, (2) kidnapping in the second degree, (3) strangulation in the second degree, and (4) assault in the third degree. Before trial, the state, pursuant to § 54-1o, filed a motion seeking permission to introduce the defendant's signed statement into evidence. In the motion, the state acknowledged that, because Merritt did not record the interrogation, in violation of § 54-1o, the defendant's statement was presumed inadmissible. The state requested a hearing to establish that the statement was admissible pursuant to an exception to the custodial interrogation recording requirement under subsections (e) and (h) of § 54-1o. Section 54-1o (e) (2) provides an exception to the recording rule if "electronic recording [is] not feasible . . . ." Even when no exception applies, § 54-1o (h) provides that the state may overcome the presumption of inadmissibility by proving, by a preponderance of the evidence, that the defendant's statement "was voluntarily given and is reliable, based on the totality of the circumstances."

The court held a pretrial hearing on the state's motion, at which Critz, Merritt, and Detective Sergeant Daniel Casale testified. Critz testified that, at approximately 5:30 a.m., he read the defendant his *Miranda* rights from a *Miranda* warning card that he carries

State *v.* Christopher S.

during his shifts, and the defendant acknowledged that he understood his rights. The defendant talked to Critz, saying that he had been at a party watching the "[Manny] Pacquiao" fight. Critz noted that the defendant was bleeding from the mouth, and he did not appear to be intoxicated. Critz also testified that he advised the defendant of his *Miranda* rights a second time at 7:23 a.m. at the Enfield police station, using a Connecticut Judicial Branch form titled "Notice of Rights—Bail," which the defendant signed. Critz had no further involvement in the case. The state entered into evidence both the *Miranda* warning card and Notice of Rights— Bail form.

Merritt testified that, at approximately 1:10 p.m., he spoke with the defendant at the police station in an interview that lasted approximately one hour. Merritt did not readvise the defendant of his *Miranda* rights because Critz told him that he had already given the defendant two advisements earlier that morning. Merritt did testify, however, that he confirmed with the defendant that he had been advised of his rights and that the defendant spoke voluntarily. Merritt followed his usual technique in questioning the defendant—he obtained the defendant's version of the incident and then wrote out a statement that the defendant could freely edit and adopt. The defendant made and initialed changes, ultimately signing the statement. Merritt also testified that the defendant did not appear intoxicated. He acknowledged that he knew that, under § 54-1o, he should have recorded the interrogation. Although Merritt testified that the police department's recording equipment was not working around the time of the defendant's interrogation, he also admitted that he neither checked to find out if the equipment was working at the time nor documented a reason for not recording. Merritt also admitted that he had a department issued

State *v.* Christopher S.

iPhone with him at the time and that holding cells at the station also had video cameras.

Casale testified that he "overs[aw] the process" of the defendant's interrogation. His office was approximately twenty feet from Merritt's desk, and, during the course of the interview, he was "bouncing back and forth" between his office and Merritt's desk. Casale also acknowledged that he had no explanation for why the interrogation was not recorded.

After testimony and brief argument by the parties, the trial court issued an oral ruling, concluding that the state could introduce the defendant's statement in its case-in-chief. The court initially noted: "[T]he defendant . . . was under formal arrest. There was a postbooking statement. The defendant was subjected to police interrogation. This was a custodial interrogation at a police station. No electronic recording was made. The written statement [was taken from a] person under investigation or accused of a . . . class A or B felony . . . . [T]he court finds by the preponderance of the evidence that there was [no] compliance with the electronic recording requirement, and . . . based on that, the statement is presumed to be inadmissible as evidence . . . ."

The court considered the claimed exceptions to § 54-1o that the state argued, namely, subsections (e) (2) and (h) of the statute. The court concluded that subsection (e) (2) did not apply because the state had failed to prove that recording was not feasible. Nevertheless, the court determined that the state had met its burden under subsection (h) to prove that the statement was voluntarily given and reliable under the totality of the circumstances. The court explained the basis for its decision in its oral ruling on the day of the hearing and elucidated further in response to multiple motions for

State *v.* Christopher S.

articulation filed by the parties during the pendency of
the defendant's appeal to the Appellate Court.

As to the voluntariness inquiry, the trial court deter-
mined that the defendant's statement was given "pursu-
ant to a knowing, intelligent, and voluntary waiver of
the defendant's *Miranda* rights." Specifically, the court
reasoned that the defendant had received and under-
stood two *Miranda* warnings in a matter of hours before
his interrogation, Merritt was not required to provide
a third warning before the interrogation began, there
was no evidence of improper or coercive interrogation
methods by the police, there was no issue with respect
to the defendant's mental state, the defendant made
edits to the statement and signed it as his own, the
interrogation took place in an open office area and
lasted only one hour, and the statement itself said that
the defendant understood his rights and gave the state-
ment voluntarily.

As to reliability, the court concluded that the defen-
dant's statement was reliable based on the totality of the
circumstances. The court credited Merritt's testimony,
noting that Merritt explained to the defendant that the
written statement was intended to be "his statement
. . . his words . . . what he believes happened . . .
and, if there's anything that he wants . . . to add or
take out of the statement, then we can do so." (Internal
quotation marks omitted.) The defendant made multiple
corrections, crossed things out, changed words, ini-
tialed his changes, and signed each page. The court
further reasoned that the statement was taken "pursu-
ant to standard police practices," and there was "no
evidence of threats, promises, or coercive or deceptive
measures by the police."

The case went to trial, and the state, during its case-
in-chief, offered the defendant's statement into evi-
dence. The jury ultimately found the defendant guilty

State *v.* Christopher S.

of assault in the third degree and strangulation in the second degree. It found him not guilty of kidnapping in the second degree and burglary in the first degree. The defendant was sentenced to a total effective term of three years incarceration and two years of special parole.

The defendant appealed to the Appellate Court, raising three claims: (1) the trial court erred in granting the state's motion to admit his unrecorded statement because the state failed to prove that the statement was voluntarily given and reliable; (2) the trial court abused its discretion by overruling the defense counsel's objection to an inaccurate argument made by the state; and (3) the Appellate Court should exercise its supervisory authority over the administration of justice and order a new trial for the defendant and require trial judges to give a particular jury instruction in cases in which the police violate § 54-1o. *State* v. *Spring*, supra, 186 Conn. App. 199–201. The Appellate Court rejected each of the defendant's arguments and affirmed the judgment of conviction. See id., 201, 220.

We thereafter granted the defendant's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court properly uphold the trial court's determination that the state met its burden of proving that the defendant's statement obtained during a custodial interrogation, which was not recorded in accordance with . . . § 54-1o, was nonetheless admissible pursuant to the provisions of . . . § 54-1o (h)?" And (2) "[s]hould this court exercise its supervisory authority over the administration of justice to require that, when a custodial interrogation subject to the provisions of . . . § 54-1o . . . is not recorded in accordance with that statute, a jury be instructed that it may consider the noncompliance with the recording requirement in determining the weight to accord a statement that is the product of the unrecorded custodial

State *v.* Christopher S.

interrogation?'' *State* v. *Spring*, 330 Conn. 963, 963–64, 199 A.3d 1079 (2019). Additional facts will be set forth as necessary.

I

We begin with the defendant's contention that the Appellate Court erred by upholding the trial court's decision to admit his unrecorded statement into evidence because the state failed to meet its burden of proving that the statement was voluntarily given and reliable under the totality of the circumstances, as required by the exception found in § 54-1o (h).

A

As an initial matter, the parties disagree as to whether the defendant's claim regarding subsection (h) of § 54-1o is constitutional or evidentiary. The defendant argues that the legislature's use of the word ''voluntar[y]'' in § 54-1o (h) refers to the preexisting constitutional requirements that a confession may be admitted against a criminal defendant only if it comports with due process and *Miranda.* The defendant contends that, because the voluntariness inquiry has constitutional implications, our review of the trial court's voluntariness determination is de novo. The state contends that the claim is purely evidentiary because this court has unequivocally stated that neither the federal nor the state constitution requires custodial interrogations to be recorded. The state thus asserts that our review is only for abuse of discretion, and the trial court's finding that the statement was voluntarily given is ''entitled to substantial deference . . . .'' We conclude that the defendant's claim is constitutional with respect to the voluntariness inquiry and evidentiary with respect to the reliability inquiry.

The Appellate Court concluded that the defendant's claim was not constitutional because this court has

State *v.* Christopher S.

made clear that the recording of custodial interrogations is not a constitutional concern. *State* v. *Spring*, supra, 186 Conn. App. 208; see, e.g., *State* v. *Edwards*, 299 Conn. 419, 443–44, 11 A.3d 116 (2011); *State* v. *Lockhart*, 298 Conn. 537, 542–44, 550 and n.6, 4 A.3d 1176 (2010); *State* v. *James*, 237 Conn. 390, 428–29, 678 A.2d 1338 (1996). Although we have stated that the constitution does not require the recording of custodial interrogations, we also stated in *Lockhart* that we were leaving to the legislature whether to require recording and how to balance competing interests to implement such a requirement. *State* v. *Lockhart*, supra, 574–75, 577. Our statement that a recording is not constitutionally mandated does not inform our consideration about whether the legislature's chosen framework for effectuating a recording requirement might incorporate constitutional norms.

The question of whether the legislature used the word ''voluntar[y]'' in § 54-1o (h) in the constitutional sense is a matter of statutory construction over which we exercise plenary review. See, e.g., *Lyme Land Conservation Trust, Inc.* v. *Platner*, 334 Conn. 279, 288, 221 A.3d 788 (2019). ''When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, [includ-

State *v.* Christopher S.

ing] the legislative policy it was designed to implement
. . . .'' (Internal quotation marks omitted.) Id., 288–89.

Section 54-1o (b) provides: ''An oral, written or sign
language statement of a person under investigation for
or accused of a capital felony or a class A or B felony
made as a result of a custodial interrogation at a place
of detention shall be presumed to be inadmissible as
evidence against the person in any criminal proceeding
unless: (1) An electronic recording is made of the custo-
dial interrogation, and (2) such recording is substan-
tially accurate and not intentionally altered.'' The
presumption of inadmissibility may be overcome when
the state proves, by a preponderance of the evidence,
that ''the statement was voluntarily given and is reliable,
based on the totality of the circumstances.'' General
Statutes § 54-1o (h).

It is significant that the legislature chose to use the
word ''voluntar[y]'' in a statute dealing with the admis-
sion of statements made by criminal defendants subject
to custodial interrogation in places of detention because
''voluntary'' is a constitutional term of art in this con-
text. In *State* v. *Piorkowski*, 236 Conn. 388, 672 A.2d
921 (1996), we explained that, ''[i]n the jurisprudence
of statements made to the police by persons accused
of crime, traditionally there are two types of 'voluntari-
ness' inquiries. One, dating from before *Miranda* and
emanating from principles of due process, involves
essentially whether the defendant's will was overborne
by the police in eliciting the statement. See, e.g., *Ari-
zona* v. *Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113
L. Ed. 2d 302 (1991); *Colorado* v. *Spring*, 479 U.S. 564,
107 S. Ct. 851, 93 L. Ed. 2d 954 (1987); *Schneckloth* v.
*Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d
854 (1973); *Lynumn* v. *Illinois*, 372 U.S. 528, 83 S. Ct.
917, 9 L. Ed. 2d 922 (1963). The other, deriving from
*Miranda*, involves essentially whether, when the police
interrogate a suspect who is in their custody, they prop-

State *v.* Christopher S.

erly administer the *Miranda* warnings to him and he waives the rights about which he was warned. See, e.g., *Powell* v. *Nevada*, 511 U.S. 79, 114 S. Ct. 1280, 128 L. Ed. 2d 1 (1994); *Colorado* v. *Connelly*, 479 U.S. 157, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986); *Moran* v. *Burbine*, 475 U.S. 412, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986); *Fare* v. *Michael C.*, 442 U.S. 707, 99 S. Ct. 2560, 61 L. Ed. 2d 197 . . . (1979). Although *Miranda* is not itself a constitutional command; *Miranda* v. *Arizona*, 384 U.S. 436, 467, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); it is nonetheless a judicially created prophylactic rule designed to safeguard the defendant's fifth amendment right to remain silent because of the inherently coercive quality of custodial interrogation. *Withrow* v. *Williams*, 507 U.S. 680, 691–92, 113 S. Ct. 1745, 123 L. Ed. 2d 407 (1993) . . . .'' (Citations omitted.) *State* v. *Piorkowski*, supra, 404–405. The fact that the legislature chose to use this word to the exclusion of any other it could have chosen, and the fact that the legislature chose not to define it, despite having defined other words in the statute; see General Statutes § 54-1o (a) (1) through (5); suggests that it intended the word to have the constitutional meaning that the word carries in this context. See General Statutes § 1-1 (a) (''[i]n the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly'').

Relatedly, the statute's intended audience is significant. For example, in *State* v. *Piorkowski*, supra, 236 Conn. 388, we construed the word ''involuntariness'' as used in a prior version of General Statutes § 54-94a, and we explained that the statute was ''intended for the ears and eyes of criminal lawyers—both prosecution and defense—and of judges, particularly appellate judges, who preside over criminal proceedings. That

State *v.* Christopher S.

circumstance reinforces the conclusion that, when the legislature used the phrase 'involuntariness of a statement' . . . the legislature intended the phrase to mean what those lawyers and judges would most naturally think it means, namely, what its meaning has long been in the law of confessions.'' Id., 409. The same is true here. Section 54-1o involves the admission of confessions made by criminal suspects during custodial interrogations at places of detention. It is self-evident that it falls squarely within the purview of criminal lawyers, judges, and law enforcement. In choosing the word ''voluntar[y],'' the legislature logically would have ascribed to it the meaning that its intended audience would assume—voluntary in the constitutional sense.

In view of the foregoing, we agree with the defendant that, in passing § 54-1o and including subsection (h), the legislature created a new procedure that references and involves an existing constitutional requirement. As the defendant notes, § 54-1o (h) makes it ''procedurally necessary for the state to raise the voluntariness issue and then to meet its traditional burden in order to overcome the statutory presumption of inadmissibility applicable to a statement obtained in violation of the statute's recording requirement.'' In practical effect, in cases in which subsection (h) applies—because the police failed to record and there is no applicable exception under subsection (e)—a defendant need not file a motion to suppress to seek to exclude the defendant's statement from evidence. Rather, the statement is presumed to be inadmissible, and it is incumbent on the state to affirmatively seek to overcome the presumption by proving that, despite their failure to record, officers did not run afoul of the constitution. A trial court's ultimate, legal determination of voluntariness in this context is not entitled to deference.[3] The legislature also added

[3] The concurrence concludes that the voluntariness inquiry under § 54-1o is purely evidentiary because ''the legislature does not establish constitutional requirements.'' Our conclusion that the voluntariness inquiry under

State *v.* Christopher S.

to the state's traditional, constitutional burden a new requirement—to prove that the defendant's statement is reliable based on the totality of the circumstances. Accordingly, we conclude that the defendant's claim with respect to voluntariness is constitutional.

As to reliability, however, the defendant's claim is evidentiary.[4] By requiring the state to prove that an unrecorded statement is reliable, the legislature sought to address the risk of false confessions. See *State* v. *Lockhart*, supra, 298 Conn. 589–95 (*Palmer, J.*, concur-

§ 54-1o (h) is constitutional does not suggest that the legislature has created a constitutional requirement. Specifically, we do not conclude that the legislature has created a constitutional right to the recording of a custodial interrogation. Nor do we conclude that recording a custodial interrogation is sufficient, in itself, to establish voluntariness. Rather, in passing § 54-1o, the legislature referenced and incorporated the previously existing voluntariness requirement that the state already had the burden of proving. The recording of the custodial interrogation is simply a means to prove or disprove voluntariness. As the concurrence notes, the voluntariness requirement contained in § 54-1o (h) "overlap[s] or track[s]" the due process requirement of voluntariness. The voluntariness requirement in the statute does track the traditional constitutional voluntariness requirement. It does not create a new constitutional right; it simply incorporates what the state was already required to prove. In short, the statute provides that no statement given during a custodial interrogation, obtained in violation of the recording mandate, could be admitted into evidence in the absence of a showing that the police followed the long recognized, constitutional requirement that such a statement be given voluntarily. The only requirement that the statute does create is that the state must also prove the reliability of such a statement. As we discuss, that requirement is an evidentiary inquiry.

Under the concurrence's interpretation of the statute, the state would have a lower, evidentiary burden with respect to proving voluntariness when the police fail to record a custodial interrogation in violation of the statute. We decline to construe the statute to create such an anomalous result. See, e.g., *Kelly* v. *New Haven*, 275 Conn. 580, 616, 881 A.2d 978 (2005). Just as the legislature cannot create a constitutional right, neither can it lower the state's burden of proof. Moreover, the consequence of concluding that the voluntariness inquiry is merely evidentiary is that a trial court's determination of voluntariness is entitled to substantial deference on appeal. We decline to create two different standards for reviewing the voluntariness of a statement given during a custodial interrogation.

[4] The defendant does not appear to dispute that the reliability inquiry under § 54-1o (h) is an evidentiary question.

State *v.* Christopher S.

ring) (explaining utility of recording in ensuring both that confessions are voluntarily given and that defendants do not confess falsely). In *State* v. *James*, supra, 237 Conn. 390, this court explained that, under a Connecticut common-law, evidentiary rule dating back to the mid-eighteenth century, the admissibility of a confession turned not on whether the statement was coerced but whether it was true. See id., 414–15. We further explained that, in *Rogers* v. *Richmond*, 365 U.S. 534, 81 S. Ct. 735, 5 L. Ed. 2d 760 (1961), the United States Supreme Court "rejected the [common-law] focus on reliability in determining whether a confession is admissible." *State* v. *James*, supra, 415. For purposes of the federal constitution, "in determining whether a confession should be excluded as involuntary, the test is whether the defendant's will was overborne, which is to be determined with complete disregard of whether . . . the [accused] in fact spoke the truth." (Internal quotation marks omitted.) Id.; see also *Rogers* v. *Richmond*, supra, 544. Thus, the reliability of a confession is not a constitutional matter under the federal constitution, and principles that govern evidentiary rulings apply to our review of this claim.[5] Accordingly, we conclude that the defendant's claim with respect to reliability is evidentiary.

B

We turn now to the defendant's claim that the state failed to meet its burden of proving that his statement was voluntarily given. The defendant argues that § 54-1o (h) imposes a burden on the state to meet both traditional, constitutional tests of voluntariness: (1) that the defendant's statement was taken in accordance with

---

[5] The defendant does not claim that reliability is a constitutional matter under the state constitution. Accordingly, we have no occasion to consider whether our state constitution provides greater protection than the federal constitution. See, e.g., *State* v. *Pinder*, 250 Conn. 385, 418 n.31, 736 A.2d 857 (1999).

State *v.* Christopher S.

the requirements of *Miranda*, and (2) that the police did not overbear the defendant's will in violation of his right to due process. The defendant acknowledges that the trial court did consider both *Miranda* and due process voluntariness in reaching its decision but contends that it came to the wrong conclusion. The state contends that the statute required it to prove only that the defendant's statement comported with due process and that, even if compliance with *Miranda* was required, the trial court correctly determined that the defendant knowingly and intelligently waived his rights. We need not decide whether the state was required to prove both due process voluntariness and compliance with *Miranda* because, even if we assume that the state did have to prove *Miranda* compliance, the record supports the trial court's determination that there was no *Miranda* violation and that the defendant's statement was voluntarily given under the totality of the circumstances.

The standard of review of a trial court's ruling on voluntariness in the context of the state's motion to admit a defendant's confession under § 54-1o (h) is the same as when a defendant moves to suppress a statement on the ground that it was given involuntarily. "[T]he trial court's findings as to the circumstances surrounding the defendant's interrogation and confession are findings of fact . . . which will not be overturned unless they are clearly erroneous. . . . [A]lthough we give deference to the trial court concerning these subsidiary factual determinations, such deference is not proper concerning the ultimate legal determination of voluntariness. . . . Consistent with the well established approach taken by the United States Supreme Court, we review the voluntariness of a confession independently, based on our own scrupulous examination of the record. . . . Accordingly, we conduct a plenary review of the record in order to

State *v.* Christopher S.

make an independent determination of voluntariness.''
(Citation omitted; internal quotation marks omitted.)
*State* v. *Lawrence*, 282 Conn. 141, 153–54, 920 A.2d
236 (2007).

We begin with the defendant's claimed *Miranda* vio-
lations. The defendant contends that the police failed
to comply with *Miranda* in three ways. First, the defen-
dant argues that he did not receive a valid *Miranda*
warning at the police station because the rights listed
on the Notice of Rights—Bail form that Critz read to
him at the station are materially different from those
constituting a proper *Miranda* warning. This argument
lacks merit.

After first being advised of his *Miranda* rights at the
time of his arrest,[6] the defendant was again advised of
his rights at the police station. At the station, Critz read
the defendant his *Miranda* rights from a form titled
Notice of Rights—Bail, which provides in relevant part
that ''[a]nything you say or any statements you make
*may be used* against you.'' (Emphasis added.) The lan-
guage the United States Supreme Court used in
*Miranda* was that ''anything said *can and will be used
against the individual in court.*'' (Emphasis added.)
*Miranda* v. *Arizona*, supra, 384 U.S. 469. The Notice
of Rights—Bail form also provides in relevant part: ''You
have the right to not say anything about this offense
you are charged with; you may remain silent. . . .'' The
defendant argues that, by contrast, ''[s]tandard
*Miranda* warnings are direct: 'You have the right to
remain silent.' '' The United States Supreme Court has
made clear that *Miranda* warnings need not ''be given
in the exact form described in that decision. . . . [T]he
rigidity of *Miranda* [does not] exten[d] to the precise
formulation of the warnings given a criminal defendant

[6] The defendant does not challenge the validity of the *Miranda* warning
he was given at the time of his arrest.

State *v.* Christopher S.

. . . and . . . no talismanic incantation [is] required to satisfy its strictures. . . . The inquiry is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by *Miranda*.'' (Citations omitted; footnote omitted; internal quotation marks omitted.) *Duckworth* v. *Eagan*, 492 U.S. 195, 202–203, 109 S. Ct. 2875, 106 L. Ed. 2d 166 (1989). We conclude that the slight differences noted by the defendant are immaterial for the purpose of communicating the relevant rights to criminal suspects. The language used in the Notice of Rights—Bail form reasonably conveys a suspect's rights under *Miranda*.

The second *Miranda* issue that the defendant raises is that Merritt should have readvised the defendant of his rights before beginning his interrogation at 1:10 p.m. We disagree.

In determining whether a defendant, who received a *Miranda* warning at an earlier time, is entitled to a new *Miranda* warning before a subsequent custodial interrogation, courts consider a nonexclusive list of eight factors: ''(1) the length of time that has passed between the initial warnings and the subsequent interrogation, (2) whether the warnings and interrogation occurred in the same location, (3) whether the officers who gave the warnings were the same as those who conducted the subsequent interview, (4) whether the subsequent interview concerned the same or new offenses and facts, (5) the physical settings of the advisement and interviews, (6) whether the officer reminded the suspect of his rights before resuming questioning, (7) whether the suspect confirmed that he understood his rights or manifested an awareness of his rights, and (8) the apparent mental and emotional state of the suspect.'' *In re Kevin K.*, 299 Conn. 107, 123, 7 A.3d 898 (2010). No factor is dispositive; it is a totality of the circumstances inquiry. See id., 125–26.

State *v.* Christopher S.

We conclude that the relevant facts and circumstances support the trial court's conclusion that Merritt was not required to readvise the defendant before beginning his interrogation. Less than six hours had passed between the defendant's second *Miranda* warning and the interrogation. Although some courts have determined that readvisement was necessary after a shorter gap; see, e.g., *People* v. *Sanchez*, 88 Misc. 2d 929, 936, 391 N.Y.S.2d 513 (N.Y. Sup. 1977); others have determined that readvisement was unnecessary after a longer gap. See, e.g., *In re Interest of Miah S.*, 290 Neb. 607, 614, 861 N.W.2d 406 (2015) (citing cases); see also, e.g., *In re Kevin K.*, supra, 299 Conn. 125–26 (two day gap between warning and interrogation favored readvisement, but, in light of totality of circumstances, readvisement was unnecessary). We acknowledge that the officer who gave the warning was not the one who performed the interrogation, but we are unpersuaded by the defendant's argument that Merritt needed to readvise the defendant to show the defendant "that he was prepared to honor [the defendant's rights]." It is sufficient that Merritt reminded the defendant of his rights by expressly confirming with him that he had been advised of his rights earlier that day, and the interview concerned the same incident for which the defendant had been arrested and advised of his rights. Moreover, the trial court found that the defendant understood the warnings he received, and there is nothing in the record to suggest that his understanding would have disappeared or dissipated between the warnings and the interrogation. The trial court also found that there were "no issues in terms of the defendant being intoxicated or otherwise [mentally] incapacitated . . . ." In light of the foregoing factors, we conclude that Merritt's decision not to readvise the defendant of his rights did not violate *Miranda*.

The defendant's final *Miranda* claim is that he never gave a "knowing" and "voluntary" waiver of his *Miranda*

State *v.* Christopher S.

rights, without which his statement is inadmissible. We disagree.

"Even [in the absence of] the accused's invocation of the right to remain silent, the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused in fact knowingly and voluntarily waived [*Miranda*] rights when making the statement. . . . The waiver . . . must be voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." (Citation omitted; internal quotation marks omitted.) *Berghuis* v. *Thompkins*, 560 U.S. 370, 382–83, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010). Despite this seemingly difficult task, "[t]he prosecution . . . does not need to show that a waiver of *Miranda* rights was express. An implicit waiver of the right to remain silent is sufficient to admit a suspect's statement into evidence." (Internal quotation marks omitted.) Id., 384. "[When] the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." Id.; see also *State* v. *Shifflett*, 199 Conn. 718, 731–32, 508 A.2d 748 (1986) ("the state must demonstrate . . . (1) that the defendant *understood* his rights, and (2) that the defendant's *course of conduct* indicated that he did, in fact, waive those rights" (emphasis in original; internal quotation marks omitted)).

As we have explained, the defendant received two valid *Miranda* warnings from Critz, one at 5:30 a.m. and one at 7:23 a.m. Critz testified that, after he administered the first warning, the defendant "said . . . that he understood his rights." The defendant also adopted the statement that Merritt wrote during the interroga-

State *v.* Christopher S.

tion, which included the following: "When I was arrested earlier this date, I was advised of my rights. I understand those rights and give this statement voluntarily."[7] The defendant understood his rights when Merritt sought to interrogate him around 1:10 p.m.

The evidence presented at the hearing also established that the defendant's statements to Merritt during his interrogation were not coerced. Merritt testified that, before he began the questioning, he confirmed with the defendant that the defendant had "previously been advised of his rights" and was "willing to speak with" Merritt. The defendant then gave an account of the incident and read, made changes to, and signed Merritt's written summation of what the defendant had said. The statement itself expressly indicates that the defendant was giving the statement "voluntarily." There is nothing in the record to suggest that Merritt obtained the defendant's cooperation through physical or psychological coercion, trickery, threats, promises of leniency, or other questionable tactics. Accordingly, because the defendant received and understood valid *Miranda* warnings and voluntarily participated in Merritt's interrogation, he implicitly gave a knowing, voluntary waiver of his *Miranda* rights.

In sum, even if, as the defendant contends, the state had to prove that the police complied with the requirements of *Miranda*, the record supports the trial court's determination that there was no *Miranda* violation in this case.

_____

[7] We acknowledge that this second acknowledgment of understanding did not occur until after the interrogation was under way, and thus it cannot, in and of itself, serve as the basis from which to conclude that the defendant understood and waived his rights. But the evidence establishes that the defendant acknowledged that he understood his rights at 5:30 a.m., and that he still understood his rights at approximately 1 p.m., and there is no evidence in the record to suggest that he suffered a lapse in that understanding at any point in between.

State *v.* Christopher S.

Finally, with respect to the second traditional voluntariness inquiry, the parties agree that the court must also look to the totality of the circumstances to determine whether a statement was voluntarily given. The defendant contends that the trial court failed to consider Merritt's conduct in its determination that the defendant's statement was voluntarily given under the totality of the circumstances. Specifically, the defendant argues that the court disregarded that Merritt (1) chose not to record the interrogation, (2) chose not to readvise the defendant of his *Miranda* rights, (3) chose not to have the defendant sign the waiver portion of the form on which his statement was written, and (4) ignored the defendant's "condition," which involved having blood on his mouth and clothing. The state argues that, to render a confession involuntary, the police misconduct must *cause* the suspect to confess, and there is no causal connection between Merritt's conduct and the defendant's will being overborne. The state also argues that the totality of the circumstances supports the trial court's determination that the defendant voluntarily gave his statement to Merritt. We agree with the state.

"Irrespective of *Miranda,* and the fifth amendment itself . . . any use in a criminal trial of an involuntary confession is a denial of due process of law." (Internal quotation marks omitted.) *State* v. *Hafford,* 252 Conn. 274, 298, 746 A.2d 150, cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000). "The state has the burden of proving the voluntariness of the confession by a fair preponderance of the evidence. . . . [T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . . The ultimate test remains . . . [i]s the confession the product of an

State *v.* Christopher S.

essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. . . . The determination, by the trial court, whether a confession is voluntary must be grounded upon a consideration of the circumstances surrounding it. . . . Factors that may be taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep." (Internal quotation marks omitted.) *State* v. *Lawrence*, supra, 282 Conn. 153. Under the due process clause of the fourteenth amendment, however, in order for a confession to be deemed involuntary and thus inadmissible at trial, there must be "police conduct, or official coercion, causally related to the confession . . . ." (Citations omitted; internal quotation marks omitted.) Id., 175. In other words, there must be an "essential link between [the] coercive activity of the [s]tate, on the one hand, and a resulting confession by a defendant, on the other . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 54, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).

Here, the record supports the trial court's determination that the defendant voluntarily gave his statement to Merritt. The defendant was thirty-eight years old at the time of the interrogation. There was no indication that he was intoxicated or impaired. He was formally advised of his *Miranda* rights twice and reminded of them a third time just before the interrogation began, at which point he had been in police custody for less than six hours. The interrogation itself took place in

State *v.* Christopher S.

a large room with multiple cubicles. Questioning was conducted by only one official, with his supervisor checking in periodically. The interrogation took place in a single session, which lasted only one hour. The defendant took the opportunity to read and make multiple changes to the statement as written by Merritt, including that the defendant was giving his statement "voluntarily" and of his "own free will with no threats or promises made to" him. There is no evidence of physical or psychological punishment. There is no evidence that Merritt used any potentially coercive methods, such as threats, promises of leniency, or deception. Indeed, the defendant has not even argued that Merritt used any such tactics or that the defendant's will was actually overborne.

Even if we assume that the trial court failed to consider Merritt's conduct as part of the totality of the circumstances, the defendant has not attempted to explain how the specific circumstances that he lists, either in isolation or in the aggregate, could overbear a suspect's will and elicit an involuntary confession.[8] Although it is troubling that Merritt offered no satisfactory explanation as to why the interrogation was not recorded,[9] a failure to record does not itself bear on a suspect's will. Similarly, it is not clear how Merritt's failure to readvise the defendant of his *Miranda* rights, which we have concluded was not required, or his choice not to have the defendant sign the waiver portion of the form on which the statement was written, which

---

[8] The record does reflect, contrary to the defendant's assertions, that the trial court considered Merritt's conduct. For example, the court stated that, although Merritt was aware that the law required recording, he had not acted in bad faith.

[9] We emphasize the importance of recording custodial interrogations, as required by § 54-1o. Such recordings enable the fact finder to view the circumstances of the interrogation for himself or herself and provide strong evidence to determine both the voluntariness and reliability of a defendant's statement.

State *v.* Christopher S.

is irrelevant because we have concluded that the defendant implicitly waived his *Miranda* rights, affected the defendant's will. Nothing in the record suggests that the defendant was seriously injured or needed medical attention, and there is no connection between Merritt's "ignor[ing]" the defendant's bloodied gum and the defendant's will being overborne. Accordingly, we conclude that the defendant's statement was freely given and not the result of overbearing police conduct, and its admission into evidence did not violate the defendant's right to due process. Cf. *State* v. *Azukas*, 278 Conn. 267, 290–91, 897 A.2d 554 (2006) (confession was deemed voluntary when trial court found that police conduct was not coercive, defendant was twice advised of *Miranda* rights, detention was for few hours, and interrogation was not prolonged).

In sum, the Appellate Court properly upheld the trial court's determination that the state met its burden under § 54-1o (h) of proving that the defendant's statement was voluntarily given. As we have explained, assuming that the state had to prove that the police complied with *Miranda*, the record demonstrates that it did so. Additionally, looking to the totality of the circumstances surrounding the defendant's interrogation, aside from the failure to record, there is no indication that the police engaged in any misconduct that overbore the defendant's will and elicited an involuntary confession.

C

The defendant next claims that the Appellate Court improperly upheld the trial court's determination that the state met its burden of proving that the statement was reliable under the totality of the circumstances. Specifically, the defendant argues that, to prove reliability, the state must introduce independent, corroborating evidence that the statement itself is true, and, here, the

State *v.* Christopher S.

state relied only on evidence regarding the circumstances under which the statement was given. The state contends that all of the circumstances surrounding the giving of a statement are relevant to a reliability determination, but there is no requirement under our law that there be independent, corroborating evidence of the contents of the statement. Furthermore, the state argues that it did introduce substantial, independent evidence corroborating the truth of the defendant's statement.

As we explained in part I A of this opinion, the reliability inquiry is evidentiary in nature. "The standard that we apply in reviewing a trial court's evidentiary ruling depends on the context in which the ruling was made. . . . When a trial court's determination of admissibility is founded on an accurate understanding of the law, it must stand unless there is a showing of an abuse of discretion. . . . When the admissibility of the challenged testimony turns on the interpretation of an evidentiary rule, however, we are presented with a legal question and our review is plenary." (Citations omitted; footnote omitted.) *State* v. *Burney*, 288 Conn. 548, 555, 954 A.2d 793 (2008).

We begin by emphasizing the distinction between the voluntariness and reliability inquiries under § 54-1o (h). The voluntariness inquiry addresses a defendant's constitutional right to due process and, potentially, those rights protected by *Miranda*, without regard to whether a confession is true. Reliability, on the other hand, is concerned with whether a statement is true. See *State* v. *Lockhart*, supra, 298 Conn. 589–90 (*Palmer, J.*, concurring) ("[s]ometimes . . . the issue is not so much whether the confession was the product of police coercion but, rather, whether the interrogation methods used by the police . . . caused the suspect to admit to a crime that he did not commit"). Justice Palmer explained in his concurrence in *Lockhart* that we have

State *v.* Christopher S.

become increasingly aware that false confessions, despite being counterintuitive, occur with some regularity; id., 590–91 (*Palmer, J.*, concurring); and that "a recording requirement would dramatically reduce the number of wrongful convictions due to false confessions . . . ." Id., 595 (*Palmer, J.*, concurring). The legislative history of § 54-1o reveals that the legislature was also concerned with false confessions when it considered creating the recording requirement. See 54 H.R. Proc., Pt. 28, 2011 Sess., p. 9481, remarks of Representative Gary Holder-Winfield ("[M]ost false confessions stemming from an interrogation . . . come from the fact that there may be some intimidation, threats or coercion. This [b]ill seeks to put in place [an audiovisual] recording of the interrogation such that we can capture and see whether . . . those threats, coercions or intimidations happen[ed].").

Although voluntariness and reliability are distinct inquiries, evidence that is probative of voluntariness may also be probative of reliability. Specifically, evidence regarding the circumstances under which a statement was given can inform both determinations. See, e.g., *State* v. *Pierre*, 277 Conn. 42, 61–62, 890 A.2d 474 (fact that witness indicated he was giving statement freely, reviewed it with attorney, and signed it in eight places demonstrated lack of coercion, providing sufficient indicia of reliability for admission of statement under *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986)), cert. denied, 547 U.S. 1197, 126 S. Ct. 2873, 165 L. Ed. 2d 904 (2006); *State* v. *Collins*, 147 Conn. App. 584, 594–95, 82 A.3d 1208 (involuntariness of defendant's statements to police may undermine reliability of those statements), cert. denied, 311 Conn. 929, 86 A.3d 1057 (2014). Because the same evidence can be used as evidence of both requirements, courts must be careful not to conflate the two analyses. It is entirely

State *v.* Christopher S.

possible for a confession to be voluntary, yet false, or involuntary, yet true, and courts must not collapse voluntariness and reliability into a single inquiry. See, e.g., *United States* v. *Brown*, 617 F.3d 857, 860 (6th Cir. 2010) ("even voluntary 'inculpatory confessions . . . are frequently unreliable' ").

With these principles in mind, we turn to the dispute between the parties regarding the type of evidence that the state was either required or permitted to use to prove that the defendant's statement was reliable. Both parties acknowledge that independent evidence corroborating the truth of the defendant's statement and evidence regarding the circumstances under which the statement was given are relevant to reliability. We agree with this initial point of common ground.

This court has regularly relied on the circumstances under which a statement was given to determine whether it is reliable. See, e.g., *State* v. *Carrion*, 313 Conn. 823, 839–40, 100 A.3d 361 (2014) (listing among factors "particularly salient" to determination of reliability of child witness' prior out-of-court statement whether questions eliciting statement were leading or open and presence of authority figure during questioning); *State* v. *Pierre*, supra, 277 Conn. 61 ("[w]e emphasize . . . that the linchpin of admissibility is reliability: the statement may be excluded as substantive evidence only if the trial court is persuaded, in light of the circumstances under which the statement was made, that the statement is so untrustworthy that its admission into evidence would subvert the fairness of the fact-finding process" (internal quotation marks omitted)); *State* v. *Mukhtaar*, 253 Conn. 280, 306, 750 A.2d 1059 (2000) (witness' prior inconsistent statement to police that otherwise meets requirements for admissibility for substantive purposes "may have been made under circumstances so unduly coercive or extreme as to grievously undermine the reliability generally inher-

State *v.* Christopher S.

ent in such a statement, so as to render it, in effect, not that of the witness''); *State* v. *James*, supra, 237 Conn. 414–15 (general approach under Connecticut common-law, evidentiary rule intended to protect defendants from convictions based on false confessions was to ''identify certain inducements [that] made a confession unreliable,'' such as whether it was ''obtained as a result of a promise of a benefit or leniency or a threat of harm'' (internal quotation marks omitted)).

Evidence that independently corroborates the substantive truth of a statement is also highly probative of a statement's reliability. As the amici point out, in questioning suspects, the police often hold back known details of the crime to see if the suspects independently mention details that could not be fabricated. In a related context, this court has also approved of the use of independent, corroborating evidence to establish the trustworthiness of a defendant's statement. See, e.g., *State* v. *Leniart*, 333 Conn. 88, 114, 215 A.3d 1104 (2019) (under ''trustworthiness'' doctrine, which grew out of and modified corpus delicti rule, state may generally rely on defendant's statements to establish all elements of crime ''as long as there is sufficient, independent evidence to establish the trustworthiness of those statements''); *State* v. *Hafford*, supra, 252 Conn. 315 (under old version of corpus delicti rule, confessions were admissible only if state ''demonstrate[d] through extrinsic evidence that the crime charged had been committed'').

Although independent, corroborating evidence is highly probative of reliability, we are not persuaded that independent, corroborating evidence *is required* to prove reliability under § 54-1o (h). We first consider the plain language of the statute. The legislature chose to require the state to prove that an unrecorded statement is ''reliable, based on the totality of the circumstances.'' General Statutes § 54-1o (h). The fact that the

State *v.* Christopher S.

statute calls for a "totality of the circumstances" inquiry and does not include the term "corroborating evidence" undermines the defendant's argument that any particular type of evidence—independent, corroborating or otherwise—is necessary to the inquiry. See, e.g., *Scholastic Book Clubs, Inc.* v. *Commissioner of Revenue Services*, 304 Conn. 204, 219, 38 A.3d 1183 ("it is a well settled principle of statutory construction that the legislature knows how to convey its intent expressly . . . or to use broader or limiting terms when it chooses to do so" (citation omitted)), cert. denied, 568 U.S. 940, 133 S. Ct. 425, 184 L. Ed. 2d 255 (2012).

In a related statute; see *Connecticut Podiatric Medical Assn.* v. *Health Net of Connecticut, Inc.*, 302 Conn. 464, 475–76, 28 A.3d 958 (2011) (looking to related statutes to construe meaning of statutory term); requiring the trial court to make a prima facie determination of the "reliability" of a jailhouse informant's testimony, the legislature set forth a number of "factors" that the court "may consider" in undertaking that inquiry. General Statutes § 54-86p (a). These factors include "(1) [t]he extent to which the . . . testimony is confirmed by other evidence"; "(2) [t]he specificity of the testimony"; "(3) [t]he extent to which the testimony contains details known only by the perpetrator of the alleged offense"; "(4) [t]he extent to which the details of the testimony could be obtained from a source other than the defendant"; and "(5) [t]he circumstances under which the jailhouse witness initially provided information supporting such testimony to . . . police . . . including whether the jailhouse witness was responding to a leading question." General Statutes § 54-86p (a). Although corroborating evidence is included in the list, it is only one factor that the court may consider. The fact that the legislature did not require corroborating evidence to prove reliability in that context supports

State *v.* Christopher S.

our conclusion that it is also just one factor to consider under § 54-1o (h).

We are also unpersuaded by the line of cases that the defendant cites for the proposition that independent, corroborating evidence is required to prove reliability. See *State* v. *Hafford*, supra, 252 Conn. 317; *State* v. *Harris*, 215 Conn. 189, 194–95, 575 A.2d 223 (1990); *State* v. *Doucette*, 147 Conn. 95, 98–106, 157 A.2d 487 (1959), overruled in part by *State* v. *Tillman*, 152 Conn. 15, 202 A.2d 494 (1964); *State* v. *LaLouche*, 116 Conn. 691, 694–95, 166 A. 252 (1933), overruled in part by *State* v. *Tillman*, 152 Conn. 15, 202 A.2d 494 (1964). These cases deal with a different doctrine—the corpus delicti rule and, relatedly, trustworthiness—which, despite dealing with the admissibility of confessions, address a different concern than we address in the cases implicated by and culminating in the legislature's passage of § 54-1o.[10] The defendant has not provided any reason for us to conclude that the legislature had those doctrines in mind when it required the state to

_____

[10] The corpus delicti is "the occurrence of the specific kind of loss or injury embraced in the crime charged." (Internal quotation marks omitted.) *State* v. *Leniart*, supra, 333 Conn. 97. For instance, "[i]n a homicide case, the corpus delicti is the fact of the death, [regardless of whether] feloniously caused, of the person whom the accused is charged with having killed or murdered." (Internal quotation marks omitted.) Id. The corpus delicti rule, also known as the corroboration rule; id., 97 n.5; is a common-law rule that "generally prohibits a prosecutor from proving the [fact of a transgression] based solely on a defendant's extrajudicial statements." (Internal quotation marks omitted.) Id., 97. Thus, in a murder trial, for example, the rule would prevent the state from relying solely on the defendant's statement that he or she had killed a victim to prove that the victim was dead.

Although the corpus delicti rule, like § 54-1o, exists, in part, to prevent the admission of false confessions into evidence, the primary purpose of the corpus delicti rule is to "avoid the patent injustice of convicting an innocent person . . . *of an imaginary crime.*" (Emphasis added.) Id., 105. That is, the rule requires independent evidence not to confirm that the defendant is the one who committed the crime, but to confirm that the crime charged actually occurred. It exists to provide reassurance that the crime took place, not that the defendant was the one responsible.

State *v.* Christopher S.

prove reliability under the totality of the circumstances. Accordingly, we are not persuaded that the requirement in the corpus delicti and trustworthiness context, that the state must introduce independent, corroborating evidence, mandates such a requirement in the context of § 54-1o (h).

Although we do not agree with the defendant that the statute requires the state to introduce independent, corroborating evidence to prove reliability, we do agree with the defendant and the amici that such evidence is preferable in view of the purpose of the statute. The presumption of inadmissibility under § 54-1o is designed to encourage the police to record custodial interrogations by creating a consequence for their failure to do so. As we noted in *State* v. *Lockhart*, supra, 298 Conn. 537, one of the benefits of recording is to avoid the "swearing contests" between law enforcement and defendants regarding what happened in the interrogation room. (Internal quotation marks omitted.) Id., 566. When officers fail to record, we return to that paradigm. By requiring the police to offer independent, corroborating evidence, we avoid the swearing contests because there is other evidence from which to evaluate the truth of a statement, beyond the competing testimonial versions of the interrogation.

Moreover, courts evaluating unrecorded statements under § 54-1o must be mindful that, even if evidence of the circumstances in which a statement is given is sufficient to conclude that the statement was voluntarily given, that conclusion does not necessarily compel the conclusion that the same evidence is sufficient to conclude that the statement is reliable. See *State* v. *James*, supra, 237 Conn. 424 (This court does not "perceive . . . that involuntariness necessarily equates with falsity. Although coercion is reasonably thought to create a reason to confess falsely, whether a particular coerced confession is also likely to be false depends

State *v.* Christopher S.

on many variables.''). In the absence of independent, corroborating evidence of the statement's truth, the state's evidence regarding the circumstances in which the statement was given should be that much stronger for the purpose of proving reliability.

Having rejected the defendant's claim that independent, corroborating evidence is required to prove that a statement is reliable, we must now determine whether the trial court correctly concluded that the state met its burden of proving that the defendant's statement was reliable. We conclude that the trial court correctly determined that the statement was admissible as evidence at the defendant's criminal trial.

First, contrary to the defendant's assertion, the state did introduce independent evidence that corroborated certain important parts of the defendant's statement. In particular, the defendant's statement is consistent with Critz' testimony with respect to the circumstances of the arrest. The defendant's statement explains that, when the police arrived at the home of the defendant's ex-wife, the defendant ''went for a walk. When [he] went for a walk, the police detained [him].'' This is consistent with Critz' testimony that, while he was processing the scene, officers ''noticed a man walking back toward [the police]. . . . [T]here was an exchange of words, [Critz was] not quite sure what it was, and [he] was notified by another officer . . . that it was [the defendant] . . . .'' The defendant's statement also explains that, before the incident with the victim, the defendant was ''watching the fight on TV'' and that, after he was detained, he ''talked to an officer about what had happened.'' This is consistent with Critz' testimony confirming, on cross-examination, that the defendant had told him that ''he was at some kind of party, watching the Pacquiao fight.'' The defendant's statement also explains that the victim ''punched [him] once in the face, causing [his] gum to be cut . . . .'' This is

State *v.* Christopher S.

consistent with Critz' testimony confirming, on cross-examination, that Critz ''noticed [that the defendant] apparently was bleeding from his mouth.'' Similarly, the defendant's statement notes that, after his altercation with the victim, ''[w]e both had a lot of blood on us from the fighting.'' This is consistent with Critz' testimony that the defendant had ''blood on his shirt and . . . blood on his phone.'' The blood on his shirt is also physical evidence, consistent with the defendant's statement, that an altercation had taken place. Critz' testimony also notes that the victim was questioned at the scene by other officers, which further suggests the occurrence of a violent, domestic dispute between the defendant and the victim, which is what the defendant's statement describes.[11]

In addition to this corroborating evidence, we also acknowledge all of the evidence set forth in part I B of this opinion that was credited by the trial court regarding the circumstances under which the statement was given, none of which suggests that Merritt coerced the defendant into giving a false confession. The defendant was advised of his *Miranda* rights, the interrogation lasted only one hour, the defendant made several corrections to his written statement, and Merritt did not use any potentially coercive interrogation methods. See, e.g., *State* v. *Carrion*, supra, 313 Conn. 841 (fact that

---

[11] To the extent that the defendant argues in his reply brief that the state was required to introduce independent evidence of the corpus delicti of strangulation and assault for the defendant's statement to be admissible, the defendant misinterprets the evolution of our corpus delicti rule into its modern form, the trustworthiness doctrine. Indeed, under the former rule, the state would have had to introduce independent evidence of the corpus delicti itself for the statement to be admissible. But under the modern rule, that is no longer the case. As we have previously explained, the state no longer must establish the corpus delicti of a crime through extrinsic evidence; it need only ''introduce substantial independent evidence [that] would tend to establish the trustworthiness of the [defendant's] statement.'' (Internal quotation marks omitted.) *State* v. *Leniart*, supra, 333 Conn. 113. That independent evidence need not corroborate the corpus delicti itself.

State *v.* Christopher S.

child corrected interviewer on several points indicated
reliability because child was not just giving interviewer
what she thought interviewer wanted); *State* v. *Mukh-
taar*, supra, 253 Conn. 305 (written, signed statement
"provide[s] significant assurance of an accurate rendi-
tion of the statement and that the declarant realized it
would be relied [on]" (internal quotation marks omit-
ted)). Indeed, the defendant has not argued that any
part of his statement was untrue.

In sum, we conclude that the defendant has failed to
establish that the trial court incorrectly determined that
the defendant's statement was reliable. Even if we were
to require independent, corroborating evidence to
prove the reliability of a statement, the totality of the
circumstances in this case, including instances of cor-
roboration, demonstrates that the trial court correctly
concluded that the state met its burden. Accordingly,
because the state successfully proved that the defen-
dant's statement was both voluntarily given and reliable
under the totality of the circumstances, we conclude
that the trial court properly ruled that the statement was
admissible as evidence at the defendant's criminal trial.

II

The defendant also claims that this court should exer-
cise its supervisory authority over the administration
of justice to require our trial courts to instruct juries to
evaluate with "particular caution" statements obtained
by custodial interrogation that are out of compliance
with the recording mandate in § 54-1o (b), and should
order that the defendant be given a new trial because
the trial court did not give such an instruction in this
case.[12] Specifically, the defendant contends that when,

[12] The defendant also mentions in his brief that, "[u]nder the circumstances
here, it was plain error not to inform the . . . jury that the Enfield police
violated the recording mandate . . . ." To the extent the defendant is
asserting a claim under the plain error doctrine, we note that "[t]he plain
error doctrine, which is codified at Practice Book § 60-5, is an extraordinary
remedy used by appellate courts to rectify errors committed at trial that,

State *v.* Christopher S.

"as here, the court and the jury have only police assurances that they conducted a fair and proper custodial interrogation, the trial court should instruct the jury (1) that the law required that the police make a recording of the interrogation, (2) that the jury is authorized to draw an adverse inference against the state for failure to provide the jury with the required recording, and (3) that the jury must weigh testimony regarding the interrogation and statement obtained from it with special caution." We decline the defendant's invitation to invoke our supervisory authority to require trial courts to give a special instruction in all cases in which the police fail to record a custodial interrogation. In declining to do so, however, we emphasize that it is well within the trial court's discretion to give such an instruction in appropriate cases.

At the outset, we note that the defendant did not request a jury instruction related to Merritt's failure to record the interrogation; nor did he object to the instructions that were given by the court, a copy of which he had been given in advance of the final charge

---

although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] *the existence of the error is so obvious* that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . . [Thus, an appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both *so clear* and so harmful that a failure to reverse the judgment would result in manifest injustice." (Emphasis added; internal quotation marks omitted.) *State* v. *Diaz*, 302 Conn. 93, 101, 25 A.3d 594 (2011). Given that the defendant is asking us to invoke our supervisory authority to require a jury instruction that was not previously required, we fail to see how the trial court's failure to sua sponte give that instruction constituted plain error. See, e.g., id., 104 n.8 ("[i]t is axiomatic that the trial court's proper application of the law existing at the time of trial cannot constitute reversible error under the plain error doctrine").

State *v.* Christopher S.

to the jury. As the Appellate Court noted, if this claim were of constitutional magnitude, it likely would have been deemed waived under *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), but we have previously declined to apply the waiver rule to requests that we exercise our supervisory authority to adopt a new rule regarding a special jury instruction. See *State* v. *Diaz*, 302 Conn. 93, 100 n.5, 25 A.3d 594 (2011) (although state argued that defendant waived claim by failing to request special credibility instruction, claim was not waived because defendant was requesting adoption of new rule requiring trial courts to give special instruction, and, therefore, any such claim before trial court would have been futile).

Turning to the merits of the defendant's contention, we are mindful that, "[a]lthough [a]ppellate courts possess an inherent supervisory authority over the administration of justice . . . [that] authority . . . is not a form of free-floating justice, untethered to legal principle. . . . Our supervisory powers are not a last bastion of hope for every untenable appeal. They are an *extraordinary* remedy to be invoked only when circumstances are such that the issue at hand, [although] not rising to the level of a constitutional violation, is nonetheless of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Constitutional, statutory and procedural limitations are generally adequate to protect the rights of the defendant and the integrity of the judicial system. Our supervisory powers are invoked only in the rare circumstance [when] these traditional protections are inadequate to ensure the fair and just administration of the courts." (Emphasis in original; internal quotation marks omitted.) *State* v. *Wade*, 297 Conn. 262, 296, 998 A.2d 1114 (2010).

In support of his argument, the defendant contends that we have previously adopted jury instructions that

State *v.* Christopher S.

require the fact finder to scrutinize certain testimony, such as that of complaining witnesses, accomplices, and informants. See, e.g., *State* v. *Arroyo*, 292 Conn. 558, 561, 973 A.2d 1254 (2009), cert. denied, 559 U.S. 911, 130 S. Ct. 1296, 175 L. Ed. 2d 1086 (2010); *State* v. *Patterson*, 276 Conn. 452, 469–70, 886 A.2d 777 (2005); *State* v. *Ortiz*, 252 Conn. 533, 561–63, 747 A.2d 487 (2000). The defendant contends that, as in those cases, when the police fail to record an interrogation in violation of § 54-1o, jurors would not be aware of the methods the state used to procure the evidence. As such, the defendant argues, the jury needs to be informed of the provenance of the evidence and to weigh its reliability in light of its source.

We are not persuaded that, in all cases in which the police fail to record a custodial interrogation, we should mandate such an instruction. As we have explained, "[g]enerally, a [criminal] defendant is not entitled to an instruction singling out any of the state's witnesses and highlighting his or her possible motive for testifying falsely." (Internal quotation marks omitted.) *State* v. *Baltas*, 311 Conn. 786, 820, 91 A.3d 384 (2014). Unlike the "inevitably suspect" testimony of an accomplice, complainant, or informant; *State* v. *Patterson*, supra, 276 Conn. 469; evidence of an unrecorded statement is put before the jury only after the trial court has determined that the statement is more likely than not reliable. An unrecorded statement already has a legislatively prescribed presumption of inadmissibility and is, therefore, substantially different from testimony of an accomplice, complainant, or informant. We do not believe that it is necessary to mandate a jury instruction in all cases, when the state must already overcome the presumption of inadmissibility. Cf. T. Sullivan & A. Vail, "The Consequences of Law Enforcement Officials' Failure To Record Custodial Interviews as Required by Law," 99 J. Crim. L. & Criminology 215, 215, 224–26

State *v.* Christopher S.

(2009) (authors removed presumption of inadmissibility of unrecorded interviews from model recording statute and provided instead for jury instruction). Indeed, prior to the enactment of § 54-1o, we declined to invoke our supervisory authority to address the admission of unrecorded confessions. See *State* v. *Lockhart*, supra, 298 Conn. 576–77. We explained that "the procedures already in place to prevent the admission into evidence of involuntary or untrustworthy confessions" are sufficient to protect the integrity of a trial. Id., 577. The enactment of § 54-1o has made those protections even stronger. Given the procedures already in place to prevent the admission into evidence of involuntary or untrustworthy confessions, we are not convinced that a jury instruction in all cases is necessary to guard against a threat to "the integrity of a particular trial . . . [or] the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) Id.

The defendant also points to other jurisdictions that require special instructions when the police fail to follow laws requiring that custodial interrogations be recorded. For example, state recording statutes in Michigan, New York, North Carolina, and Wisconsin provide for a jury instruction requirement when the police fail to record certain custodial interrogations. See Mich. Comp. Laws Serv. § 763.9 (LexisNexis 2016) ("the jury shall be instructed that it is the law of this state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement"); N.Y. Crim. Proc. Law § 60.45 (3.) (d) (McKinney 2019) ("upon request of the defendant, the court must instruct the jury that the people's failure to record the defendant's confession, admission or other statement as required . . . may be weighed as a factor, but not as the sole factor, in determining whether such confession,

298 SEPTEMBER, 2021 338 Conn. 255

State *v.* Christopher S.

admission or other statement was voluntarily made, or was made at all''); N.C. Gen. Stat. § 15A-211 (f) (3) (2019) (''[w]hen evidence of compliance or noncompliance with the requirements of this section has been presented at trial, the jury shall be instructed that it may consider credible evidence of compliance or noncompliance to determine whether the defendant's statement was voluntary and reliable''); Wis. Stat. Ann. § 972.115 (2) (a) (West 2007) (''upon a request made by the defendant . . . and unless the state asserts and the court finds that [certain conditions apply] or that good cause exists for not providing an instruction, the court shall instruct the jury that it is the policy of this state to make an audio or audio and visual recording of a custodial interrogation of a person suspected of committing a felony and that the jury may consider the absence of an audio or audio and visual recording of the interrogation in evaluating the evidence relating to the interrogation and the statement in the case'').[13]

---

[13] The defendant also notes that New Jersey and Massachusetts require special instructions when the police fail to follow law requiring that custodial interrogations be recorded. New Jersey's electronic recordation law provides that ''[t]he failure to electronically record a defendant's custodial interrogation in a place of detention shall be a factor for consideration by the trial court in determining the admissibility of a statement, and by the jury in determining whether the statement was made, and if so, what weight, if any, to give to the statement.'' N.J. Court Rules 3:17 (d); see *State* v. *Hubbard*, 222 N.J. 249, 263, 118 A.3d 314 (2015) (''[f]ollowing a comprehensive study of 'whether and how to implement the benefits of recording electronically part, or all, of custodial interrogations,' *State* v. *Cook*, 179 N.J. 533, 561, 847 A.2d 530 (2004), the [c]ourt adopted [r]ule 3:17 in 2005''). Subsection (e) of rule 3:17 provides in relevant part that, ''[i]n the absence of an electronic recordation . . . the court shall, *upon request of the defendant*, provide the jury with a cautionary instruction.'' (Emphasis added.) N.J. Court Rules 3:17 (e). ''[A] report issued by the New Jersey Supreme Court Special Committee on Recordation of Custodial Interrogations in 2005 recommended an instruction that the jury has 'not been provided with a complete picture of all of the facts surrounding the defendant's alleged statement and the precise details of that statement.' '' *State* v. *Lockhart*, supra, 298 Conn. 564 n.11. Similarly, the Massachusetts Supreme Judicial Court has explained that defendants are ''entitled *(on request)* to a jury instruction advising that the [s]tate's highest court has expressed a preference that such interroga-

State *v.* Christopher S.

Unlike the statutory provisions the defendant relies on that specifically provide for certain jury instructions, under § 54-1o, when the police fail to record a custodial interrogation, our legislature has provided that such statements are presumed inadmissible unless the state can establish, by a preponderance of the evidence, specific criteria to overcome the presumption. In *State* v. *Lockhart*, supra, 298 Conn. 537, we left for the legislature the "weighing and balancing [of] the benefits and drawbacks of an electronic recording requirement," and to create "the parameters of such a rule." Id., 570. The legislature did not include a requirement in § 54-1o that the trial court give a specific instruction when the state successfully overcomes the presumption of inadmissibility. See, e.g., *McCoy* v. *Commissioner of Public Safety*, 300 Conn. 144, 155, 12 A.3d 948 (2011) ("[o]ur case law is clear . . . that when the legislature chooses to act, it is presumed to know how to draft legislation consistent with its intent and to know of all other existing statutes" (internal quotation marks omitted)). We therefore decline the defendant's request that we exercise our supervisory authority to go beyond the legislature's prescribed sanction and require trial courts to give a special instruction in every case in which the police fail to record custodial interrogations. If the legislature's membership wants to revisit this issue and to incorporate a specific instruction along the lines that

tions be recorded whenever practicable, and cautioning the jury that, because of the absence of any recording of the interrogation in the case before [it], [it] should weigh evidence of the defendant's alleged statement with great caution and care." (Emphasis added.) *Commonwealth* v. *DiGiambattista*, 442 Mass. 423, 447–48, 813 N.E.2d 516 (2004).

We note that, in both New Jersey and Massachusetts, the defendant must request the jury instruction. In the present case, the defendant made no such request. Additionally, the instruction adopted in *DiGiambattista* was an effort by the Massachusetts high court to find a middle ground between excluding unrecorded confessions and doing nothing to ameliorate the harm to defendants. See id., 445–46.

State *v.* Christopher S.

other state legislatures have incorporated, they are, of course, free to do so.

We take this opportunity to emphasize, however, that it is well within the trial court's discretion to give a specific, cautionary instruction when the police fail to record a custodial interrogation in violation of § 54-1o (b). As we have explained, "[i]t is within the province, and may be within the duty, of the trial judge to not only call attention to the evidence adduced, but [also] to state to the jury in the charge his [or her] own opinion of the nature, bearing and force of such evidence." (Internal quotation marks omitted.) *State* v. *Lemoine*, 233 Conn. 502, 510–11, 659 A.2d 1194 (1995); see, e.g., id., 511 ("generally the extent to which the [trial] court should discuss the evidence in submitting a case to the jury is, so long as in criminal cases the jury [is] not directed how to find [its] verdict, within the discretion of the trial judge" (emphasis omitted; internal quotation marks omitted)); *State* v. *Anderson*, 212 Conn. 31, 49, 561 A.2d 897 (1989) ("[t]he trial court, like the jury, may assess a witness' credibility and, if relevant, may comment on it"); *State* v. *Cari*, 163 Conn. 174, 182, 303 A.2d 7 (1972) ("[o]n numerous occasions this court has stated that the trial court in a criminal case may, in its discretion, make fair comment on the evidence and particularly on the credibility of witnesses").

When the police fail to record a custodial interrogation in violation of § 54-1o (b), and the defendant requests it, the trial court would be acting within its discretion to instruct the jury that it is the law of this state to record statements made during a custodial interrogation of a person under investigation for or accused of a class A or B felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement obtained in violation of that law.

State *v.* Christopher S.

Because trial courts already have the discretion to give a cautionary instruction under existing case law, we decline to create a new supervisory rule requiring a special instruction in all cases in which the police fail to comply with the recording mandate in § 54-1o (b).

The judgment of the Appellate Court is affirmed.

In this opinion D'AURIA, ECKER and VERTEFEUILLE, Js., concurred.

MULLINS, J., with whom KAHN, J., joins, concurring. Respectfully, I concur in the result. I agree with the majority that the state met its burden under General Statutes § 54-1o (h) in the present case and, therefore, that the judgment of the Appellate Court should be affirmed. Where I part ways with the majority is in its conclusion "that the defendant's claim with respect to voluntariness is constitutional." I disagree that, by merely using the term "voluntarily" in that statute, the legislature intended to, or even properly could, create a constitutional claim for a violation of a statute governing the recording of statements taken in a place of detention. Although I agree that there may be overlap between the constitutional requirement for voluntariness and the statutory requirement in § 54-1o (h), that does not, in my view, render a claim made under the statute to be of constitutional magnitude. Thus, I would agree with the reasoning of the Appellate Court, which concluded that the claim of the defendant, Christopher S., under § 54-1o was a purely evidentiary claim and reviewable on appeal as such. See *State* v. *Spring*, 186 Conn. App. 197, 207–208, 199 A.3d 21 (2018).

First, this court clearly has explained that neither the federal constitution nor our state constitution requires the recording of custodial interrogations and the statements made therein. See, e.g., *State* v. *Lockhart*, 298 Conn. 537, 539–40, 575, 4 A.3d 1176 (2010). Indeed, we

State *v.* Christopher S.

repeatedly have rejected such a claim and declined to exercise our supervisory authority to mandate such a recording. See, e.g., *State* v. *Edwards*, 299 Conn. 419, 443–44, 11 A.3d 116 (2011); *State* v. *Lockhart*, supra, 543–44, 577; *State* v. *James*, 237 Conn. 390, 428–29, 434 and n.36, 678 A.2d 1338 (1996). As the majority points out, in *Lockhart*, we left it to the legislature to determine whether to establish any recording requirement. See *State* v. *Lockhart*, supra, 561, 574, 577; see also *State* v. *Edwards*, supra, 444. Our pronouncement in *Lockhart* cannot be read to mean that we left it to the legislature to establish any constitutional rights with respect to the recording of custodial interrogations. Indeed, the legislature simply does not have that power. See, e.g., *Boerne* v. *Flores*, 521 U.S. 507, 524, 117 S. Ct. 2157, 138 L. Ed. 2d 624 (1997) ("[t]he power to interpret the [c]onstitution in a case or controversy remains in the [j]udiciary"). Like the Appellate Court, I am aware of no authority permitting the legislature to create constitutional rights by statute.

Thus, in light of our express rejection of the claim that there is a constitutional right to recorded interrogations, the legislature was not writing on a clean slate. To be sure, in developing § 54-1o, not only was the legislature operating with the knowledge that the recording requirement in § 54-1o was not constitutionally required, but also it is not clear to me that the legislature even could go beyond its legislative mandate of developing statutory rights to creating constitutional rights. Put differently, the requirements outlined in § 54-1o are statutory, not constitutional, because the legislature does not establish constitutional requirements. Therefore, I would conclude that any claim under § 54-1o is not of constitutional magnitude.

Second, although I disagree with the majority that the legislature's use of the term "voluntarily" incorporated a constitutional dimension into § 54-1o (h), I do agree

State *v.* Christopher S.

that the understanding of the term "voluntarily" in § 54-
1o (h) is informed by how that term is used and defined
in our law. In addition, by using this term in a criminal
statute, I also agree that "the legislature intended the
[term] to mean what [criminal] lawyers and judges [who
preside over criminal proceedings] would most natu-
rally think it means, namely, what its meaning has long
been in the law of confessions." *State* v. *Piorkowski*,
236 Conn. 388, 409, 672 A.2d 921 (1996).[1] That meaning,
for purposes of due process, is that "the defendant's
will was overborne by the police in eliciting the state-
ment." Id., 404.[2]

In order to determine whether a statement was, in
fact, voluntary, this court has set forth several factors
that may be considered. Specifically, we have explained
that "[t]he determination of whether a confession is
voluntary must be based on a consideration of the total-
ity of circumstances surrounding it . . . including both
the characteristics of the accused and the details of the
interrogation. . . . Factors that may be taken into
account, upon a proper factual showing, include: the
youth of the accused; his lack of education; his intelli-
gence; the lack of any advice as to his constitutional

[1] The majority relies on *State* v. *Piorkowski*, supra, 236 Conn. 409, and
concludes that "[i]t is self-evident that [the admission of confessions made
by criminal suspects during custodial interrogations] falls squarely within
the purview of criminal lawyers, judges, and law enforcement. In choosing
the word 'voluntar[y],' the legislature logically would have ascribed to it
the meaning that its intended audience would assume—voluntary in the
constitutional sense." *Piorkowski*, however, only concluded that the term
"voluntary," when used in a statute, would have the same meaning that it
has in the law of confessions, not that the use of that word creates a
constitutional right through a statute.

[2] The term "voluntariness" is also understood, as deriving from *Miranda*
v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), to involve
"essentially whether, when the police interrogate a suspect who is in their
custody, they properly administer the *Miranda* warnings to him and he
waives the rights about which he was warned." *State* v. *Piorkowski*, supra,
236 Conn. 405. In the present case, the defendant does not challenge his
advisement or waiver of his *Miranda* rights.

State *v.* Christopher S.

rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep. . . . The state is required to prove the voluntariness of a confession by a preponderance of the evidence.'' (Internal quotation marks omitted.) *State* v. *Ramos*, 317 Conn. 19, 32, 114 A.3d 1202 (2015); see also *State* v. *Lawrence*, 282 Conn. 141, 153, 920 A.2d 236 (2007).

I agree with the Appellate Court that, in determining whether a statement is voluntary for purposes of § 54-1o (h), the factors used in the due process context for determining voluntariness are applicable. See *State* v. *Spring*, supra, 186 Conn. App. 211 (''[b]ecause the legislature has not provided a different test for determining voluntariness under the statute, we conclude that the same factors that traditionally are used under a due process analysis are relevant in determining voluntariness under § 54-1o (h)''). Indeed, I would conclude that, by its use of the term ''voluntarily,'' the legislature meant for judges to use the factors traditionally used to determine voluntariness when evaluating a statutory claim under § 54-1o (h).

It is a different question, however, whether, by use of the term ''voluntarily,'' the legislature intended to go beyond simply requiring that voluntariness be determined by our traditional factors to intending that the mere use of the term turns a claim under § 54-1o (h) into one of constitutional magnitude. I would conclude that the legislature did not intend to and, indeed, could not create a constitutional claim through the adoption of § 54-1o (h). Instead, it is clear to me that the legislature intended that the term ''voluntarily'' have the meaning it has long had in the law of confessions for purposes of the statutory protections provided by § 54-1o (h), but not that a claim under the statute is a constitutional claim, rather than a statutory one. Although the majority's position is tempting and provides § 54-1o with

State *v.* Christopher S.

stronger teeth, I would not ignore the well established separation of powers doctrine and allow constitutional rights to be created through legislative fiat.

I fully acknowledge that there is overlap between what due process requires by way of voluntariness and what § 54-1o (h) requires for the state to rebut the presumption of inadmissibility of an unrecorded statement. But the overlap does not transform this statutory requirement into a constitutional right. In other words, a claim under subsection (h) of § 54-1o is a statutory claim, despite the fact that the requirements in that subsection may overlap with certain constitutional principles.[3]

---

[3] The majority asserts that, "[u]nder the concurrence's interpretation of the statute, the state would have a lower, evidentiary burden with respect to proving voluntariness when the police fail to record a custodial interrogation in violation of the statute." Footnote 3 of the majority opinion. The majority misapprehends my interpretation of § 54-1o. I do not contend that the state would have any lesser burden than the preponderance of the evidence burden identified in the statute when attempting to demonstrate that an unrecorded confession was, nonetheless, "voluntarily given . . . ." General Statutes § 54-1o (h). Indeed, I have explained that the standard for voluntariness and the factors used in determining voluntariness under § 54-1o are the same as the standard for voluntariness and the factors used in determining voluntariness in the due process context. That the majority sees my position as creating a separate, lower, evidentiary burden of proof is perplexing.

The source of the majority's misapprehension of my position appears to lie in how a statutory claim should be treated on appeal. In my view, this statutory claim should be reviewed, if it is preserved, under the standard of review applicable to statutory claims. Our appellate review does not hinge on whether the police record the custodial interrogation. Instead, the different standard of review on appeal hinges on whether a defendant chooses to make a statutory claim for a violation of § 54-1o, or to make a constitutional claim alleging that his confession was not voluntary. It is the defendant's choice whether to assert a statutory claim, a constitutional claim, or both. Critically, contrary to the majority's view of my position, the failure of the police to record the interrogation does not prohibit the defendant from bringing a constitutional claim alleging that his constitutional rights have been violated by the admission of an involuntary statement. That constitutional claim will be reviewed on appeal, even if it is not preserved, under the standard applicable to constitutional claims. Thus, to the extent that I advocate for two standards, it is simply to be consistent with

State *v.* Christopher S.

Indeed, § 54-1o is not the only statute in which constitutional and statutory protections overlap. For instance, in *State* v. *Urbanowski*, 163 Conn. App. 377, 136 A.3d 236 (2016), aff'd, 327 Conn. 169, 172 A.3d 201 (2017), the Appellate Court examined a claim under General Statutes (Rev. to 2011) § 53a-64bb (b),[4] which provides that "[n]o person shall be found guilty of strangulation in the second degree and unlawful restraint or assault upon the same incident, but such person may be charged and prosecuted for all three offenses upon the same information." See *State* v. *Urbanowski*, supra, 386 and n.4. The statutory protections in § 53a-64bb (b) clearly overlapped with the constitutional principle against double jeopardy. The same incident requirement under the statute is virtually indistinguishable from the same transaction or occurrence requirement under double jeopardy. See *State* v. *Miranda*, 142 Conn. App. 657, 665, 64 A.3d 1268 (2013) ("[o]nce it is determined that multiple convictions and sentences challenged on double jeopardy grounds are not, in fact, for the same offense, as the state has defined the offense in question, the federal constitutional inquiry under the double jeopardy clause is at an end"), appeal dismissed, 315 Conn. 540, 109 A.3d 452 (2015). The fact that the statute prohibited punishment for the identified crimes certainly overlapped with constitutional protections.

On appeal, the defendant in *Urbanowski* brought a claim under § 53a-64bb (b), alleging that his conviction

_____

our jurisprudence, in that purely statutory claims are reviewed under the appellate standard applicable to statutory claims, and constitutional claims are reviewed under the standard applicable to constitutional claims. The majority has mixed and matched standards by acknowledging that no constitutional right was created under this statute but concluding that, simply because the statute uses the word "voluntarily," this purely statutory claim should be reviewed on appeal as if it is now a claim of constitutional magnitude.

[4] Hereinafter, all references to § 53a-64bb (b) in this opinion are to the 2011 revision of the statute.

State *v.* Christopher S.

for both assault in the second degree and strangulation in the second degree violated the protections provided in the statute. *State* v. *Urbanowski*, supra, 163 Conn. App. 383. The defendant had not clearly made a claim pursuant to § 53a-64bb (b) at trial. Id., 384. The Appellate Court explained that, "[i]nsofar as the defendant's claim is based on a violation of § 53a-64bb (b), the claim is not reviewable under *Golding*[5] because it alleges only a violation of statutory magnitude. . . . Insofar as the defendant's claim is based on a violation of the prohibition against double jeopardy afforded under the state and federal constitutions, however, the claim is reviewable under *Golding* because the record is adequate for review, and the claim is of constitutional magnitude." (Citation omitted; footnote added; footnote omitted.) Id., 386; see also, e.g., *State* v. *Graham S.*, 149 Conn. App. 334, 343, 87 A.3d 1182 (claim brought under § 53a-64bb (b) is statutory in nature), cert. denied, 312 Conn. 912, 93 A.3d 595 (2014).

I also find decisions of the Texas Court of Criminal Appeals consistent with my view and instructive in this case. In Texas, article 38.22 of the Texas Code of Criminal Procedure[6] prohibits the admission of statements

---

[5] *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

[6] Article 38.22 of the Texas Code of Criminal Procedure provides in relevant part: "Sec. 2. No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

"(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

"(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

"(2) any statement he makes may be used as evidence against him in court;

"(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

"(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

"(5) he has the right to terminate the interview at any time; and

"(b) the accused, prior to and during the making of the statement, know-

State *v.* Christopher S.

made during custodial interrogations of individuals
charged with a crime, unless such interrogations are
recorded. Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (a)
(West Cum. Supp. 2017). In examining a claim that the
warnings provided to the defendant did not comply
with the requirements of the statute, the Texas Court
of Criminal Appeals concluded that, despite the use of
phrases in the statute such as "knowingly, intelligently,
and voluntarily waives any rights set out in the warn-
ing"; Tex. Code Crim. Proc. Ann. art. 38.22, § 3 (a) (2)
(West Cum. Supp. 2017); see also Tex. Code Crim. Proc.
Ann. art. 38.22, § 2 (b) (West Cum. Supp. 2017); any
claim under that statute was nonconstitutional. See
*Nonn* v. *State*, 117 S.W.3d 874, 881 (Tex. Crim. App.
2003) ("the erroneous admission of [a statement taken
in violation of article 38.22] is appropriately character-
ized as a [nonconstitutional] error" (internal quotation

ingly, intelligently, and voluntarily waived the rights set out in the warning
prescribed by Subsection (a) of this section.

"Sec. 3. (a) No oral or sign language statement of an accused made as a
result of custodial interrogation shall be admissible against the accused in
a criminal proceeding unless:

"(1) an electronic recording, which may include motion picture, video
tape, or other visual recording, is made of the statement;

"(2) prior to the statement but during the recording the accused is given
the warning in Subsection (a) of Section 2 above and the accused knowingly,
intelligently, and voluntarily waives any rights set out in the warning;

"(3) the recording device was capable of making an accurate recording,
the operator was competent, and the recording is accurate and has not
been altered;

"(4) all voices on the recording are identified; and

"(5) not later than the 20th day before the date of the proceeding, the
attorney representing the defendant is provided with a true, complete, and
accurate copy of all recordings of the defendant made under this article.

* * *

"(e) The courts of this state shall strictly construe Subsection (a) of
this section and may not interpret Subsection (a) as making admissible a
statement unless all requirements of the subsection have been satisfied by
the state, except that:

"(1) only voices that are material are identified; and

"(2) the accused was given the warning in Subsection (a) of Section 2
above or its fully effective equivalent. . . ."

State *v.* Christopher S.

marks omitted)); see also *Davidson* v. *State*, 25 S.W.3d 183, 186 (Tex. Crim. App. 2000) (''[article] 38.22 is located in the [Texas] Code of Criminal Procedure and deals with an evidentiary matter'').

Furthermore, the Texas Court of Appeals recognized that the statutory protections provided in article 38.22 overlapped with constitutional principles. In *Foyt* v. *State*, 602 S.W.3d 23 (Tex. App. 2020), the Texas Court of Appeals explained: ''The erroneous admission of a statement in violation of article 38.22 amounts to [non-constitutional] error. . . . However, [the defendant] challenged the admission of his statement under *both* the [f]ifth [a]mendment [to the United States constitution] and article 38.22. Therefore, we address harm under the standard for constitutional error.'' (Citation omitted; emphasis added.) Id., 44 n.7.

Similarly, I would conclude that, in the present case, the defendant's claim under § 54-1o is statutory in nature. Indeed, the legislature can create only statutory rights, even if those statutory rights overlap or track constitutional ones. Of course, nothing prevents a defendant from challenging the failure to record as a statutory matter *and* moving to suppress a statement that he believes was given involuntarily in violation of due process. However, considering a challenge pursuant only to the statute to be a challenge of constitutional magnitude fails, in my view, to account for the fundamental limitations on what the legislature can do through the enactment of a statute. Construing legislative enactments to create constitutional rights simply because the legislature incorporated a constitutional term or phrase into the statute is a slippery slope and potentially runs afoul of the separation of powers doctrine in that legislatures do not establish constitutional rights. Thus, notwithstanding the overlap here between the statutory requirements and due process voluntariness considerations, I conclude that a claim under § 54-

State *v.* Christopher S.

1o is purely statutory and not of constitutional magnitude.

For the foregoing reasons, I concur in the result of the majority opinion.